UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLEN BENDER,<br>        Plaintiff,<br><br>    v.<br><br>UNUM GROUP, et al.,<br>        Defendants. | Case No. 16-cv-03990-PJH<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>Re: Dkt. Nos. 10, 30 |

Plaintiff Ellen Bender's motion to remand came on for hearing before this court on September 7, 2016. Plaintiff appeared through her counsel, Terrence Coleman. Defendants Unum Group ("Unum") and Provident Life & Accident Insurance Company ("Provident") appeared through their counsel, Mike Schmidtke. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES the motion, for the following reasons.

## BACKGROUND

This is a dispute over whether Bender is entitled to benefits under her individual disability insurance policy (the "IDI policy"). See Compl. ¶¶ 21, 29 (Dkt. 1-1). The policy was issued by defendant Unum and its wholly owned subsidiary, Provident. Compl. ¶¶ 2, 13.

Unum denied Bender's claim for benefits on July 31, 2015. Compl. ¶ 21. Bender contested the denial, providing more documentation from her treating physicians, but Unum again denied the claim for benefits on April 4, 2016. Id. Bender filed a state court

action on June 10, 2016, asserting claims for breach of contract and breach of the covenant of good faith and fair dealing against Unum and Provident. Compl. ¶¶ 25–35.[1]

On July 14, 2016, Unum and Provident removed this action to federal court under 28 U.S.C § 1441(a), maintaining that Bender's claims arise under and are preempted by ERISA. Notice of Removal ¶¶ 9–10 (Dkt. 1). Bender now brings a motion to remand the case, arguing that ERISA preemption does not apply because her policy "was not part of any employee welfare benefit plan." Mot. at 1 (Dkt. 10). Bender is a partner at the law firm of Pachulski Stang Ziehl & Jones LLP ("PSZJ"), and the motion centers on a factual dispute regarding the degree to which Bender's IDI policy is related to the group disability policies offered to PSZJ employees.

**DISCUSSION**

**A.  Legal Standards**

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 7–8 (1983) (citation omitted); see also 28 U.S.C. § 1441.

However, federal courts are courts of limited jurisdiction. See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Accordingly, the burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal, and the removal statute is construed strictly against removal jurisdiction. Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004); Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir.1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus, 980 F.2d at 566.

---

[1] Bender's third claim sought a writ of mandamus from the California Commissioner of the Department of Insurance to "review and correct" Bender's insurance policy to conform with California law. Compl. ¶¶ 36–46. This claim was not removed as it is alleged to be "transactionally unrelated" to the claims against Unum/Provident, Notice of Removal ¶ 16, and the Commissioner did not join in the removal per 28 U.S.C. § 1441(c)(2).

Any lawsuit that "'relate[s] to [an] employee benefit plan [governed by ERISA]'" is removable to federal court. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 62, 66, (1987) (quoting 29 U.S.C. § 1144(a)).  Since the burden of establishing federal jurisdiction is on the party seeking removal, a defendant removing a case on the basis that the plaintiff's state law claims necessarily invoke ERISA must show that the policy at issue is an ERISA plan.

To be an ERISA plan, an insurance policy must be part of: "(1) a 'plan, fund or program' (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits . . . (5) to the participants or their beneficiaries." Kanne v. Connecticut Gen. Life Ins. Co., 867 F.2d 489, 492 (9th Cir. 1988) (citation omitted); see also 29 U.S.C. § 1002(1) (defining "employee welfare benefit plan").

The Department of Labor has also established regulatory "safe harbors" that exclude certain types of plans from ERISA.  See Stuart v. Unum Life Ins. Co. of Am., 217 F.3d 1145, 1149 (9th Cir. 2000).  Here, plaintiff relies on a safe harbor providing that a "group or group-type insurance program offered by an insurer to employees or members of an employee organization" will not be governed by ERISA if:

> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

3

29 C.F.R. § 2510.3-1(j).

**B.   Analysis**

The crux of this motion is the parties' factual dispute over the extent of the connection—if any—between Bender's IDI policy and her employer's group disability policy. On plaintiff's account, the IDI policy was purchased separately from, and is completely independent of, her existing group disability coverage with PSZJ, and the only connection that her policy has to PSZJ is that her premiums were paid through payroll deduction. See Declaration of Ellen Bender ("Bender Decl."), Dkt. 12 at ¶¶ 2–4. Unum's account of the facts is quite different. Relying on a number of contemporaneous documents purportedly related to the IDI policy, Unum argues that both PSZJ's group disability policy and Bender's IDI were part of a single disability benefit program that was established and maintained by PSZJ.

The court will first resolve this factual dispute, and then turn to whether, as a legal matter, Unum has met its burden to show that the IDI policy is governed by ERISA.

**1.   Plaintiff's Evidentiary Objections**

As a preliminary matter, plaintiff objects to several declarations submitted by Unum. Defendants rely extensively on declarations from Donna Novack and Tammi Roberts, both Unum employees, to authenticate several documents purportedly evincing a connection between Bender's IDI policy and her employer's group disability policy. See Dkt. 25 ("Novack Decl."), 26 ("Roberts Decl."), 32 ("Supp. Novack Decl."), 33 ("Supp. Roberts Decl."). Plaintiff objects to this evidence, arguing that (1) the authentication of the documents is "conclusory" because neither declaration contains adequate foundation, such as a description of the declarants' duties at Unum, see Dkt. 27 at 1–2; and (2) the "supplemental declarations" submitted after Bender filed her reply brief should not be considered by the court, see Dkt. 34.

The court OVERRULES Bender's objections to the Novack and Roberts declarations. While neither declaration provides detailed background on the job responsibilities of the declarants, each provides their job title and establishes that the

statements are made based on their personal knowledge.  Novack is a "Multilife Case Administrator" and Roberts is the "Director, IDI Underwriting"; both work at Unum's offices in Worchester, Massachusetts.  Novack Decl. ¶ 1; Roberts Decl. ¶ 1.  The declarations further aver that Unum Group provides "billing" and "underwriting" services for their polices.  Novack Decl. ¶ 1; Roberts Decl. ¶ 1.  The documents attached to each declaration are underwriting, policy, and billing records of the sort that Unum would retain.  This is enough foundation to authenticate the documents.

Moreover, any defects in foundation were cured by the additional details provided in Unum's motion for leave to file supplemental declarations in surreply.  Dkt. 30.  The supplemental Novack and Roberts declarations provide an overview of each declarant's job responsibilities and establish that the documents attached are regularly maintained and relied on as business records by Unum Group.  See Supp. Novack Decl. ¶¶ 2–3; Supp. Roberts Decl. ¶¶ 2–3.  Because the court finds that the supplemental materials are helpful in understanding the full factual record, and the plaintiff has been permitted an opportunity to respond, the court will GRANT Unum's administrative motion (Dkt. 30) and consider these supplemental declarations.

**2.     Whether Bender's Individual Policy Was Part of an ERISA Plan**

a.     Unum's Burden of Proof

Before proceeding to address the factual dispute, the court must first clarify the applicable burden of proof.  There is a "strong presumption" against removal in the Ninth Circuit, and that "jurisdiction must be rejected if there is any doubt as to the right of removal."  Gaus, 980 F.2d at 566.  However, this language in Gaus does not establish, as plaintiff suggests, that the proof must be beyond all reasonable doubt in order to avoid remand.  See Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 403–04 (9th Cir. 1996).  The usual standard for proving facts supporting federal question jurisdiction is a preponderance of the evidence.  McNutt v. Gen. Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936) ("jurisdictional facts" in support of removal must be established by "the party alleging jurisdiction" by "a preponderance of evidence").  This court

therefore evaluates the evidence presented under a preponderance standard, resolving doubts against removal jurisdiction. Under Gaus, the proponent of jurisdiction—here, Unum—bears the burden of proof.

### b. The Connection Between Bender's IDI Policy and the "Contemporaneous Documents" Submitted by Unum

Plaintiff's motion to remand relies primarily on two declarations: one by Bender herself and one by Megan Lorick, an administrative director at PSZJ. See Dkt. 12, 13. In plaintiff's telling, her law firm, PSZJ, has maintained a group disability policy through Unum since 2008. Lorick Decl. ¶ 2. In 2013, Bender and her husband met with an insurance broker to discuss their insurance needs. Bender Decl. ¶ 2. The IDI policy she ultimately purchased—the one at issue in this case—was presented as being "separate from and completely independent from the existing group coverage." Id. ¶ 3. PSZJ did not participate in the selection of the insurance, other than an arrangement whereby premiums were paid via paycheck deduction. Id. ¶ 4. Bender was ultimately responsible for the premiums. Id. Moreover, PSZJ did not file any plan summaries to comply with ERISA. Lorick Decl. ¶ 4.

Bender's IDI policy bears the policy number 06-675-79811290, the risk number 00158725, and includes the name of her employer PSZJ on its first page. Bender Decl. Ex. A at 1. The listed monthly premium is $269.28. Id. The final page of the policy is an application form signed by Bender and dated April 4, 2013. Id. at 27.

Contesting Bender's account, Unum submits a number of "contemporaneous documents" to argue that Bender's IDI policy was part of a "Supplemental Disability Plan" (the "Plan"), which was established by PSZJ and includes both individual policies and group policies. In defendant's telling, PSZJ's broker informed Unum in 2013 that it was seeking additional disability coverage through group policies and/or IDI coverage. Roberts Decl. ¶ 4 & Ex. B. One of the options was a "reverse combo option," which is designed to offer disability coverage to employees and additional levels of disability coverage to highly compensated employees/partners. Id. On or around March 25, 2013,

PSZJ executed the "Supplemental Disability Plan." See Roberts Decl. Ex. C. The plan includes a number of "tiers" for different PSZJ employees—partners, non-partners, et al. Id. at 1–2. Applications were to be submitted by June 25, 2013. Id. at 6. For highly compensated employees (Tiers 1, 2 and 5), PSZJ agreed to pay the required premiums in full. Id. In consideration for PSZJ's establishment of the Supplemental Disability Plan, Unum offered a 25% premium discount. Roberts Decl. ¶ 5(g).

Pursuant to the Plan, personalized enrollment packets were prepared and sent to PSZJ partners and employees. The packet prepared for Bender bears her name, states that the coverage is "made available by Pachulski Stang Ziehl & Jones LLP," and asks for a response by April 16, 2013. Supp. Roberts Decl. Ex. H at 1 (the "Enrollment Packet"). The Enrollment Packet further explains that the policy is individually owned, and is offered at a discount. Id. at 2–3. It lists the "Supplemental IDI benefit" offered—which is in addition to an existing "group LTD Benefit"—as $5,000. Id. at 6. Regarding certain features of the IDI policy, the Packet states that PSZJ "has selected these features to add to your individual disability policy a higher level of protection and flexibility." Id. at 9.

Unum also submits a "Premium Payment Authorization" form, bearing Bender's signature and dated April 4, 2013, which states that "I am applying for coverage under the [IDI] Plan available through [PSZJ]." Roberts Decl. Ex. G at 1. The authorization states that if coverage is approved, "I request [PSZJ] to pay the premiums shown below." Id. The listed premium is $269.28 per month. Id.

Bender disputes that any of these records relate to her IDI policy, but the documents themselves make clear that there is a connection. The Enrollment Packet lists precisely the same benefit ($5,000) and premium ($269.28 per month) as Bender's IDI policy. Compare Roberts Decl. Ex. H at 6, 17 with Bender Decl. Ex. A at 1. The Premium Payment Authorization form is signed by Bender on precisely the same date that she signed the application for her IDI policy. Compare Roberts Decl. Ex. G with Bender Decl. Ex. A at 27. The Plan lists the "GSI maximum benefit" for Tier 1 (partners residing in California, which would include Bender) as $5,000, the same benefit as

7

1    Bender's IDI policy.  Roberts Decl. Ex. C at 1.  Moreover, the Plan documents list "T1"
2    (presumably Tier 1) as Risk Number 158725, which is the very same risk number used
3    on Bender's policy.  Compare Roberts Decl. Ex. D at 1 with Bender Decl. Ex. A at 1; see
4    also Supp. Roberts Decl. ¶ 4 (risk numbers were "uniquely assigned to PSZJ").

5    Moreover, the dates of the documents submitted by Unum corroborate its account.
6    It is undisputed that Bender applied for her IDI policy on April 4, 2013.  Bender Decl. Ex.
7    A at 27.  The timing is consistent with Unum's account.  PSZJ and Unum agreed to offer
8    the Plan to PSZJ employees on March 25, 2013.  Roberts Decl. Ex. C.  The Enrollment
9    Packet asks for a response by April 19, 2013.  Supp. Roberts Decl. Ex. H at 1.  While it is
10   of course possible that Bender happened to separately purchase an IDI policy on her
11   own at the same time one was offered through her employer, the much more natural
12   inference from the documents is that the IDI policy at issue was the same one that was
13   offered by PSZJ.

14   Plaintiff's attempts to create doubts about the connection between the
15   contemporaneous documents and her IDI policy are not persuasive.  First, plaintiff argues
16   that "Tier 1" of the Supplemental Disability Plan has a "100% participation requirement for
17   33 lives", see Roberts Decl. Ex. C at 1, yet Bender had the right to cancel her policy and
18   the billing records show only 12 insureds under this Tier, see Dkt. 25-1 at 35.  However,
19   Unum explained at the hearing—and the documents reflect—that a number of the
20   partners in Tier 1 had too much existing coverage to be eligible for an IDI policy.  See
21   Roberts Decl. Ex. D at 6.  Moreover, a policy can require enrollment yet still offer a right
22   to later cancel.  See Supp. Roberts Decl. ¶ 5.

23   Second, Bender argues that the Plan states that the individual and group policies
24   "will coordinate" with each other, yet Bender's group plan and IDI plan do not refer to
25   each other.  However, the policies do not need to explicitly reference one another to
26   coordinate.  As the Enrollment Packet makes clear, the $5,000 IDI benefit is intended to
27   supplement the existing group disability coverage.  See Supp. Roberts Decl. Ex. H at 5–6
28   ("[T]his is how supplemental IDI works together with your current group LTD coverage").

8

Third, Bender argues that the Plan indicates that there will be an ongoing review process, whereas her IDI is not subject to review or modification. However, Unum explains that the modification right refers to the Plan itself—i.e., whether Unum will continue to offer policies to PSZJ employees—not a right to modify policies already issued. See Supp. Roberts Decl. ¶ 6.[2]

In sum, the court credits Unum's account and finds that the contemporaneous documents do in fact relate to Bender's IDI policy, and show that this policy was issued pursuant to PSZJ's Supplemental Disability Plan.

### 3. Whether Bender's Policy is Governed by ERISA

Even if Bender's IDI policy is part of the PSZJ Plan, it does not necessarily follow that Bender's claims are preempted by ERISA. As a partner at PSZJ, Bender was an owner and not an "employee" under ERISA. The Ninth Circuit has made clear that "a company may offer more than one benefit plan, one covering only the owner of the business and the other covering the business's employees, and maintain those two plans as independent plans under ERISA." LaVenture v. Prudential Ins. Co. of Am., 237 F.3d 1042 (9th Cir. 2001). So long as the two plans are not "intertwined so as to constitute one overall benefit plan," id. at 1047, ERISA may govern the employees' plans, but not the separate and independent plan of the owners. On the other hand, an individual policy covering only a partner may be "one component" of an "employee benefit program" that "taken as a whole, constitutes an ERISA plan." Peterson v. Am. Life & Health Ins. Co., 48 F.3d 404, 407 (9th Cir. 1995). Unum bears the burden to show that Bender's IDI policy was part of a plan covered by ERISA.

///

---

[2] The remainder of plaintiff's objections—that the policy does not include a catastrophic disability benefit, and that the Enrollment Packet states an incorrect premium and benefit—were based on an admittedly incorrect enrollment packet submitted with Unum's opposition. See Roberts Decl. Ex. E. These discrepancies were resolved when defendants submitted the correct Enrollment Packet in their supplemental filings. See Supp. Roberts Decl. Ex. H.

1   The court finds that Unum has sufficiently shown that all five elements of the statutory definition are met here. See Kanne, 867 F.2d at 492; Zide v. Provident Life & Acc. Ins. Co., No. SACV 10-00393-JVS, 2011 WL 12566818 at *5–*7 (C.D. Cal. Apr. 13, 2011) (finding ERISA preemptions on similar facts). Because Bender's IDI was issued pursuant to the PSZJ Plan, it is part of a program that provides disability benefits. Nor does Bender dispute that PSZJ was an employer. The two remaining two elements, then, are that the plan was "established by" PSZJ and that the Plan includes participants that are employees—not just partners like Bender. But as the documents submitted by Unum show, Bender's IDI was part of the larger Supplemental Disability Plan that was established by PSZJ. See Robert Decl. Ex. C ("Unum is pleased to partner with [PSZJ] to provide these benefits to your employees."); Supp. Roberts Decl. Ex. H ("This coverage is made available by [PSZJ]."). It is also clear that some non-partner employees were covered under the group policies of the Plan. Roberts Decl. ¶ 5(c); Novack Decl. Ex. A at 1.

The final issue is whether the "safe harbor" applies to exempt Bender's IDI policy from ERISA. The regulation on which Bender relies has four requirements: (1) there is no premium "contribution" by the employer; (2) participation is completely voluntary; (3) the employer does not "endors[e]" the program; and (4) the employer receives "no consideration" in connection with the program. 29 C.F.R. § 2510.3-1(j). Here, Unum argues that none of the first three requirements are met. Opp'n at 20–21. However, because the court concludes that PSZJ "endorsed" the plan, it need not consider the other elements of the safe harbor. See Stuart v. UNUM Life Ins. Co. of Am., 217 F.3d 1145, 1150 (9th Cir. 2000) ("[F]ailure to satisfy one of the safe harbor's four requirements conclusively demonstrates that an otherwise qualified group insurance plan is an employee welfare benefit plan subject to ERISA.").[3]

---

[3] In particular, the parties engage in an extended debate over whether Bender or PSZJ paid for the first three months of premiums, and on the divisive legal issue of whether the 25% premium "discount" offered to Bender constitutes an employer "contribution."

10

An employer must remain neutral in order to avoid endorsing a plan. See Thompson v. Am. Home Assur. Co. 95 F.3d 429, 436 (6th Cir. 1996).  The test is whether "upon examining all the relevant circumstances, there is some factual showing on the record of substantial employer involvement in the creation or administration of the plan." Id. at 436.  Here, because Bender's policy was part of the Supplemental Disability Plan, PSZJ "negotiat[ed] the terms of the policy" and participated in its creation and selection. Id. at 436–37.  Indeed, the Enrollment Packet explicitly states that the coverage is "made available" by PSZJ and that PSZJ "selected" certain "features to add to your individual disability policy."  See Roberts Decl. Ex. H at 1, 9.  This is enough constitute "endorsement."  Cf. Kanne, 867 F.2d at 493 (distribution of "plan brochure" that "describes the plan as an ERISA plan" met that employer was more than a "mere advertiser" and thus safe harbor requirement was not met).

## CONCLUSION

For the foregoing reasons, plaintiff's motion to remand is DENIED.  As the state law claims in the operative complaint are preempted by ERISA, see Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47–54 (1987), the court will provide plaintiff leave to re-file her complaint to assert causes of action under ERISA.  Plaintiff shall file any amended complaint within 28 days of the date of this order.

**IT IS SO ORDERED.**

Dated: September 28, 2016

_____
PHYLLIS J. HAMILTON
United States District Judge

---

Compare Rosen v. Provident Life & Acc. Ins. Co., No. 2:14-CV-0922-WMA, 2015 WL 260839 at *12 (N.D. Ala. Jan. 21, 2015) (discount offered in exchange for payroll premium deduction is not an employer contribution) with Zide, 2011 WL 12566818 at *7 (C.D. Cal. Apr. 13, 2011) (safe harbor does not apply because premium discount was an employer contribution).  The court finds that it need not resolve these issues—even if Bender paid all of the premiums, the safe harbor would not apply in light of PSZJ's endorsement of the IDI policy.